**Gary Wayne McNALLY, Plaintiff,**

v.

**Dwayne S. DeWITT, Defendant.**

**No. 1:96CV–184–W.**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

April 21, 1997.

Kelly David Thompson, Jr., Bowling Green, KY, for Plaintiff.

Richard A. Dennis, Asst. U.S. Atty., Louisville, KY, for Defendant.

### MEMORANDUM

WISEMAN, Senior District Judge, Sitting by Designation.

Pending is defendant's motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), in the above-entitled civil rights action. For the reasons set forth below, defendant's motion is DENIED.

### I. Factual and Procedural Summary

At approximately 4:00 a.m. on December 3, 1995, Gary Wayne McNally was stopped outside his apartment complex in Bowling Green, Kentucky by Deputy United States Marshal Dwayne S. DeWitt. According to a criminal complaint subsequently sworn to by deputy DeWitt, he had seen the plaintiff "acting in a suspicious manner and running from the scene" where he had been initially observed by the defendant. (Def.'s Mot. Dismiss Ex. 1, at 1 ) After identifying himself as a "police officer" and deputy U.S. marshal, DeWitt attempted to conduct a field inter-

view and a pat-down search for weapons. *Id.* During the course of the stop, deputy DeWitt claims that McNally became physically and verbally uncooperative, particularly after being informed that Bowling Green police were en route. *Id.* It apparently took the assistance of several members of the public who had been roused by the confrontation to subdue and restrain the plaintiff. *Id.*

The Bowling Green police took the plaintiff into custody, yet they declined to charge him with any crime. He was not released, however, for deputy DeWitt escorted him the following day, December 4, to an arraignment before United States Magistrate Judge John M. Dixon, Jr. where he was charged, based upon a criminal complaint sworn to by the defendant, with violating 18 U.S.C. § 111. This statute makes it a federal crime for anyone to forcibly assault, resist, oppose, impede, intimidate or interfere with designated federal officials while they are engaged in or on account of the performance of official duties. 18 U.S.C. § 111(a)(1) (1994). After entry of the criminal complaint by the magistrate, the plaintiff was released on $25,000 unsecured bond and subject to conditions of release. Subsequently, and for reasons unexplained in tie record currently before the Court, Magistrate Judge Dixon ordered dismissal of the federal charge against the plaintiff on December 20, 1995.

Plaintiff instituted this civil rights action against deputy DeWitt pursuant to 42 U.S.C. § 1983 on November 6, 1996. He alleges principally that the defendant, while acting under color of law, deprived him of privileges secured by the federal Constitution, particularly the proscription against unreasonable searches and seizures found in the Fourth Amendment. Deputy DeWitt, through government counsel, has moved pursuant to Rule 12(b)(6) to dismiss plaintiff's claim on the basis that he is endowed with qualified immunity from suit for the conduct in which he is alleged to have engaged on the morning of December 3, 1995.

## II. Legal Analysis

The instant motion presents two issues for the consideration of Court: (1) in what capacity was deputy DeWitt acting when he stopped the plaintiff, and (2) does qualified immunity attach to such status?

■ Resolution of the first issue requires the Court to examine the extent to which, under federal law, members of the United States Marshals Service are authorized to engage in law enforcement activities. Under the federal statute applicable to the facts of this case, a deputy United States marshal may:

> make arrests without warrant for any offense against the United States committed in his or her presence, or for any felony cognizable under the laws of the United States if he or she has reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

28 U.S.C. § 566(d) (1994).[1] Clearly, the authority of deputy marshals to effect warrantless arrests is circumscribed by the statutory requirement that the offense committed or suspected have a federal law nexus. Here, there is no indication that deputy DeWitt stopped the plaintiff due to his suspicion that McNally had violated federal law. Indeed, although it is entirely unclear from the meager factual record presented in this matter, it would appear that the plaintiff was stopped for allegedly stealing or attempting to steal some *golf clubs*, (Compl. at ¶ 6)—certainly not a federal crime.

■ The question, then, becomes whether deputy United States marshals act in furtherance of their duties and obligations as *federal* officials when they assume a state or local law enforcement role. To the Court's knowledge, this issue has only been addressed by the Fourth Circuit in a recent, unpublished decision. In *U.S. v. Jenkins*, No. 94–5217, 1995 WL 579308 (4th Cir. Oct. 3, 1995) (per curiam), the panel considered whether a deputy marshal was engaged in the performance of official duties, for pur-

---

**1.** A substantially similar provision is found in the arrest and commitment chapter of the federal criminal code at 18 U.S.C. § 3053 (1994).

poses of prosecution under 18 U.S.C. § 111(b) when he gave chase to a fleeing thief. *Id.* at *1. While seated in a fast food restaurant and on duty, the deputy marshal witnessed the defendant steal a cellular telephone from a fellow customer. *Id.* The thief ran out of the restaurant and jumped into a car that he had parked near the door. *Id.* The deputy marshal gave chase in his own vehicle which, although unmarked, was equipped with a siren and flashing headlights. *Id.* During the course of the ensuing pursuit, a third individual—the passenger in the thief's car—fired several shots at the deputy marshal. *Id.* Although the thief was ultimately apprehended by local authorities, he was tried in federal court before a jury and convicted of assaulting a federal officer with a dangerous weapon during the performance of official duties in violation of 18 U.S.C. § 111(b). *Id.*

In denying Jenkins' assertion that the deputy marshal was not engaged in the performance of official duties because he was authorized to make arrests only for federal felonies, the Fourth Circuit countered that "Courts have consistently found that federal agents were acting in the performance of official duties when they have intervened as law enforcement officers in situations which involved criminal behavior which is not a federal felony." *Id.* at *2. As authority for this proposition, the court cited *U.S. v. Kelley*, 850 F.2d 212 (5th Cir.1988), *cert. denied*, 488 U.S. 911, 109 S.Ct. 267, 102 L.Ed.2d 255 (1988); *U.S. v. Lopez*, 710 F.2d 1071 (5th Cir.1983); and *U.S. v. Reid*, 517 F.2d 953 (2d Cir.1975). In light of these authorities, the court concluded that, "[t]he value of [a] stolen item and whether [a] crime was a felony under federal or state law are not deciding factors" in the determination of whether a deputy United States marshal is acting in the performance of official duties when he intercedes during the course of a criminal offense. 1995 WL 579308, at *2.

This Court declines to adopt the Fourth Circuit's reasoning in *Jenkins* and its implication that deputy DeWitt was acting as a federal official when he elected to stop and question the plaintiff. The statutory language of 28 U.S.C. § 566(d) is quite clear and requires no judicial gloss. Simply stated, deputy United States marshals are not authorized under federal law to engage in local law enforcement activities that are not closely related or at least incidental to their statutorily defined powers and duties. Such duties do not involve the investigation of criminal matters, but rather the execution of federal court orders, the provision of federal court security, and the custody of federal prisoners.[2] *See generally*, 28 U.S.C. § 566(a), (e) and (g) (1994). The decisional law underlying the *Jenkins* opinion which is cited above is distinguishable from the case at bar.

First, each of these cases involves an appeal from a conviction under 18 U.S.C. § 111 rather than a *Bivens*-styled federal civil rights action. This distinction is important because, as the United States Supreme Court has noted, in enacting § 111 Congress intended to protect not only federal functions, but also individual federal officers. *See U.S. v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975); *id.* at 684 n. 18, 95 S.Ct. at 1264 n. 18 ("It is ... plausible, we think, to conclude that Congress chose not to entrust to the States sole responsibility for the interdiction of attacks, fatal or not, upon federal law enforcement officials—a matter essential to the morale of all federal law enforcement personnel and central to the efficacy of federal law enforcement activities."). This conclusion is borne out by the fact that § 111 contains essentially two prongs. The statute not only punishes attacks against federal officials while they are engaged in the performance of official duties, but also assaults which occur "on account of" their status as federal officers. That is, § 111 applies equally to those situations in which a federal official is assaulted because of his position or employment. *Kelley*, 850 F.2d at 214 n. 5 (citing *Lopez*, 710 F.2d at 1074 n. 3). Moreover, actual knowl-

---

2. Indeed, to the extent that members of the marshals service are empowered to investigate, such authority is confined to fugitive matters, 28 U.S.C. § 566(e)(1)(B) (1994), and the exercise of this authority "shall [not] be construed to interfere with or supersede the authority of other Federal agencies or bureaus." *Id.* at § 566(e)(2) (1994).

edge on the part of the assailant that the target of his attack is a federal official is not required. *See Feola*, 420 U.S. at 684, 95 S.Ct. at 1263–64 ("All the statute requires is an intent to assault, not an intent to assault a federal officer."); *Reid*, 517 F.2d at 963–64.

Consideration of § 111 in its entirety thus suggests that the statute was designed to afford maximum protection to federal officers not only in the execution of their official duties but also in connection with their status as federal agents. It is thoroughly consistent with this legislative objective for the courts to hold that liability may attach even when a federal official is engaged in what is essentially a state law enforcement function. It is another thing entirely, however, to import such reasoning into the civil rights context. A liberal construction of § 111 for purposes of criminal liability does not dictate that a federal officer must be found to have acted as a federal official while engaged in conduct beyond the scope of his statutory authority, particularly when such conduct has purportedly resulted in the deprivation of constitutional rights and immunities. While a federal agent may be deemed to have acted as a federal official when injured or assaulted by an assailant, this rationale should not be used to expand the scope of powers and responsibilities assigned and clearly defined by federal statute.

■ Second, seemingly contrary authority is also distinguishable on the basis that the law enforcement activities engaged in by deputy DeWitt have no apparent relationship to his duties as a federal marshal. Although Judge Friendly wrote in *U.S. v. Reid* that a federal agent is expected to behave, in a certain way by virtue "of being an officer," 517 F.2d at 964, the federal official in that case had been explicitly instructed pursuant to applicable regulation that his employer, the Drug Enforcement Administration, "expected" its agents to take reasonable steps to respond to both state and federal law violations committed in their presence. *Id.* at 960, 964. There is no evidence in this matter that the United States Marshals Service has instructed its officers to interpose themselves when they witness state law transgressions,

nor has the defendant made such a claim. Similarly, in *U.S. v. Lopez* a federal customs officer had detained a state fugitive who was travelling in an automobile believed to contain a federal fugitive. 710 F.2d at 1072–73. The Fifth Circuit found that:

> [I]n the performance of his official duty to investigate whether a federal fugitive was in an automobile, the federal officer came across an individual reported to him to have been a state fugitive earlier that day travelling in the company of the federal offender. The federal officer was assaulted by a third person while he sought to detain the state fugitive to see if he was still sought by state authorities. We think that [a] jury … could properly find that the officer's action, *reasonably related in time and place to the performance of his federal function*, was while the officer was engaged in "the performance of his official duties[.]"

*Id.* at 1074 (emphasis supplied). The inference to be drawn and to which this Court subscribes is that federal official status in the civil rights context depends to a significant degree upon whether the state law enforcement role assumed by a federal agent is connected or at least incidental to the officer's federal function. While there is no proof in this case to this effect, it would seem readily apparent that deputy DeWitt's conduct during the early morning hours of December 3, 1995 bears no relation, incidental or otherwise, to his official responsibilities set forth in 28 U.S.C. § 566.

■ For the foregoing reasons, the Court holds that deputy DeWitt was not acting as a federal official when he stopped and attempted to frisk the plaintiff outside his home. It follows that the defendant may not claim qualified immunity from suit based upon the discharge of federal duties. In this regard it is significant to note that the plaintiff's complaint invokes the subject matter jurisdiction of this Court pursuant to 42 U.S.C. § 1983, the statutory provision authorizing an award of monetary damages for constitutional deprivations visited upon the claimant by individuals acting under color of

law.[3] As the parties should be aware, § 1983 does not extend to the constitutional torts of federal officers unless they act in concert with state or local officials. *Wheeldin v. Wheeler,* 373 U.S. 647, 650 n. 2, 83 S.Ct. 1441, 1444 n. 2, 10 L.Ed.2d 605 (1963); *District of Columbia v. Carter,* 409 U.S. 418 424–25, 93 S.Ct. 602, 606–07, 34 L.Ed.2d 613 (1973), *reh'g denied,* 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973). Although there is no statutory analogue to § 1983 for federal agents, the United States Supreme Court held in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* that a suit for money damages against federal officers could arise directly under the Fourth Amendment's implied cause of action for such relief. 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). While the plaintiff has failed to plead or otherwise allege *Bivens* liability in this matter, this fact alone will not defeat his cause of action, for deputy DeWitt was not engaged in the performance of federal duties at the time of the incidents alleged in plaintiff's complaint. The Court's holding to this effect precludes a motion to dismiss predicated upon the inapplicability of § 1983 to these facts.

▪ Having established that the defendant was not acting as a federal official on the morning of December 3, 1995, it is necessary to ascertain his status as an element antecedent to consideration of qualified immunity. By operation of Kentucky law, certain federal agents, including deputy United States marshals, are deemed "peace officers" simply by virtue of their office. Ky.Rev.Stat. Ann. § 61.365 (Baldwin 1990). The term "peace officer" is defined by statute to include "sheriffs, constables, coroners, jailers, metropolitan correctional officers, marshals, policemen and other persons with similar authority to make arrests." *Id.* at § 446.010(24) (Baldwin 1993). It is apparent from this definition that peace officers are primarily if not exclusively local law enforcement agents. Therefore, as a duly authorized peace officer, deputy DeWitt may be deemed to have been acting in furtherance of his responsibilities as a local law enforcement official when he stopped and attempted to question the plaintiff.

▪ In recognition of a strong potential for abuse of § 1983 with attendant detrimental impact upon the provision of local services, the Supreme Court has provided that government officials may benefit from qualified immunity if their actions are in conformity with clearly established constitutional or statutory law. As announced by the Court in *Harlow v. Fitzgerald:*

> We ... hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether the law was clearly established is a question to be resolved by the trial court in advance—or, more accurately, as a component—of an assessment of the objective reasonableness of the defendant's behavior. *Id.; see also Mitchell v. Forsyth,* 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985) (emphasizing that inquiry into the state of the law must be undertaken from the defendant's perspective at the time of the alleged violation, without benefit of subsequent legal clarification).

It has been long established, and thus any reasonably competent law enforcement official should be expected to know, that brief, investigatory detentions are excepted from the warrant and probable cause requirements of the Fourth Amendment. In *Terry*

---

**3.** In reality, § 1983 is not a jurisdiction-conferring provision. *See generally Hagans v. Lavine,* 415 U.S. 528, 535, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974) (stating that the statute "does not by itself confer jurisdiction upon the federal district courts to adjudicate" the claims that it authorizes). Rather, because § 1983 is essentially remedial in nature and objective, claimants must allege a separate jurisdictional basis such as 28 U.S.C. § 1331 or 28 U.S.C. § 1343(a)(3) in order for their claims to be recognized. 1 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 1.4, at 14–15 (2d ed.1991). In this case, it is clear that the plaintiff has intended to invoke the federal question subject matter jurisdiction of this Court, 28 U.S.C. § 1331 (1994), in lodging his civil rights claim against the defendant.

*v. Ohio*, the Supreme Court held that law enforcement officers may, based upon a reasonable suspicion that the detainee has engaged in criminal activity, engage in a short colloquy and a limited pat down search for weapons. 392 U.S. 1, 27, 30–31, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *see also U.S. v. Richardson*, 949 F.2d 851, 856 (6th Cir.1991) ("The scope of activities during an investigatory detention must reasonably be related to the circumstances that initially justified the stop. When actions by police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause."). The reasonable suspicion justifying a temporary stop must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" official detention. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

The record presently before the Court in this case is bereft of such facts as would inform a reasonable suspicion to conduct a *Terry* stop. It is entirely unclear from the pleadings, motions and responses on file what the circumstances were leading up to the confrontation between the parties. At this juncture, it is therefore premature to conclude that deputy DeWitt, acting under color of state law as a local law enforcement officer, engaged in conduct consistent with the Fourth and Fourteenth Amendments to the federal Constitution.[4]

### III. Conclusion

Notwithstanding the directive that qualified immunity should be determined at the "earliest possible point" in civil rights litigation "so as to protect public officials ... from the threat of liability or harassing litigation that may inhibit the discharge of ... official duties[,]" *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991), defendant's failure to adduce an appropriate factual record precludes an award of the relief he seeks. Although the constitutional law governing

this matter is well-settled, deputy DeWitt's compliance with its command remains beyond the examination and assessment of the Court. Accordingly, defendant's Rule 12(b)(6) motion to dismiss is DENIED, pending further development of the record in this matter.

An order consistent with this memorandum shall enter.

### ORDER

For the reasons stated in the accompanying memorandum entered contemporaneously herewith, defendant Dwayne S. DeWitt's motion to dismiss for failure to state a claim upon which relief may be granted, Fed. R.Civ.P. 12(b)(6), is DENIED.

It is so ORDERED.

---

**4.** Deputy DeWitt has also intimated in the instant motion that his observation of the plaintiff endowed him with probable cause to effect his arrest. (Def.'s Mot. Dismiss, at 5–6.) The Supreme Court and federal courts of appeal have taken pains in *Terry* and its progeny to establish that the reasonable suspicion justifying an investigatory detention requires a materially less substantial showing than that required to make out probable cause for arrest. If the defendant is unable or has at least failed at this point in the proceedings to prove the existence of a reasonable suspicion, any allegation that he acted with probable cause is certainly without merit.