UNITED STATES of America, Appellee,

v.

Joseph HOFFER, Defendant–Appellant.

No. 506, Docket 88–1254.

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1988.

Decided Feb. 22, 1989.

See also, D.C., 683 F.Supp. 448; D.C., 680 F.Supp. 673.

Anthony V. Lombardino, New York City, for defendant-appellant.

J. Gilmore Childers, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Linda Imes, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MESKILL, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Joseph Hoffer appeals from a judgment of conviction, entered after a jury trial in the United States District Court for the Southern District of New York (Metzner, J.), for violation of 18 U.S.C. § 111 (1982), which penalizes assault upon certain federal officers engaged in the performance of official duties.[1] His sentence includes a two-year term of imprisonment with a special condition that he receive treatment for drug dependence, and a statutory assessment of $50. On appeal, Hoffer contends that the federal officer he assaulted was not performing any official duty at the time of the attack and that he was prejudiced by the admission of hearsay evidence. Finding no merit in these contentions, we affirm.

**BACKGROUND**

On September 6, 1987, Special Agent Roberta Rivera of the Drug Enforcement Administration ("DEA") was directed to return from vacation to assist in a surveillance being conducted by DEA members. The instruction to return was given by Special Agent Rivera's supervisor in a telephone call to her home in Rockland County. Before departing for DEA headquarters in Manhattan, Agent Rivera drove her daughter, sister and niece in her own automobile to her sister's place of residence in the Bronx. She then drove back to her home in Rockland County, where she switched to an automobile assigned to her by the government. She drove this automobile to DEA headquarters, where she was designated to perform surveillance work in Manhattan and Queens. After performing this work, Rivera returned to her home, arriving at about 2:00 P.M. on September 7. Shortly after her return, she was recalled to DEA headquarters to monitor a wiretap. Later, she was assigned to a surveillance team at Newark Airport in New Jersey. Rivera was relieved from her Newark surveillance assignment at about 2:00 A.M. on September 8, but was told by her supervisor that she might be called back for the same work if the investigation then underway became more active. Rivera understood that this meant she would remain "on call." She advised the supervisor that she would go directly to her sister's house in the Bronx, and that she could be reached by beeper, by her DEA car radio, or by telephone at her sister's house. She then drove the government-assigned automobile to her sister's residence in the Bronx, arriving there at about 3:00 A.M.

Rivera circled the block near her Bronx destination in an effort to find a parking space. She finally maneuvered into a spot

---

1. Section 111 reads:
    Assaulting, resisting or impeding certain officers or employees
    Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
18 U.S.C. § 111 (1982).
    18 U.S.C. § 1114 (Supp. IV 1986) includes "any officer or employee ... of the Drug Enforcement Administration."

near a fire hydrant, but left the motor running while she walked to the rear of the automobile to check the distance between car and hydrant. At that point, she saw Hoffer walking toward her and "had an uncomfortable feeling that something was wrong at that time." She attempted to reenter the vehicle, but Hoffer attacked her when she had only one foot in. Pinning Rivera down under the steering wheel, Hoffer punched her repeatedly and threatened to "blow her brains out" with a metal object he held to her throat and represented to be a gun. Hoffer demanded Rivera's purse and continued to strike her after the purse was surrendered. He then demanded the keys to the car, and Rivera surrendered them also, after turning off the ignition. Hoffer then struck Rivera one more time and fled up the street. Rivera managed to locate her pistol and gave chase. She fired three shots at the fleeing Hoffer and hit him in the right buttock with one of the shots. An off-duty police officer who lived in the area then arrived at the scene and assisted Rivera in apprehending Hoffer. A police car later arrived at the scene in response to a radio transmission reporting "shots fired" and "an officer needing assistance."

At the close of the government's case, Hoffer moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a) on the ground that the government had failed to prove that Rivera was engaged in the performance of official duties at the time of the assault. The district court denied the motion, stating that the issue was "for the jury, not for me." During jury deliberations, the jury inquired of the court as to the "difference between being on duty and on call" and the court responded: "You are the ones who have to decide whether being on call amounts to Rivera being engaged in the performance of her official duties; and you do that from all the testimony you have heard on the issue." The language of the response was agreed to by Hoffer's attorney. A motion for a judgment of acquittal following the jury verdict, see Fed. R.Crim.P. 29(c), grounded on a claim of

insufficient evidence that Rivera was engaged in the performance of official duties at the time of the assault, was denied. A motion for a new trial, see Fed.R.Crim.P. 33, grounded on the contention that the court's response to the jury's inquiry was improper, also was denied.

## DISCUSSION

In enacting a specific statute to penalize assaults upon federal officers engaged in the performance of their duties, 18 U.S.C. § 111, "Congress intended to protect *both* federal officers and federal functions, and ... indeed, furtherance of the one policy advances the other." *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975). This protection is considered to be "a matter essential to the morale of all federal law enforcement personnel and central to the efficacy of federal law enforcement activities." *Id.* at 685 n. 18, 95 S.Ct. at 1264 n. 18. There is no bright-line test to define "performance of ... official duties," and, "[w]hile time and place may be of decisive importance in many cases, in others the mission may be of critical importance." *United States v. Boone*, 738 F.2d 763, 765 (6th Cir.), *cert. denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984). In *Boone*, the court affirmed the conviction of a defendant for attacking a judge who was walking to a court library to conduct research on a Sunday evening. The victim was said to have been "discharging her mission as a federal appeals court judge at the time of the attack." *Id.* at 765.

There are many types of situations in which federal officers discharging their missions have come under attack. *See, e.g., United States v. Hohman*, 825 F.2d 1363 (9th Cir.1987) (off-shift park ranger assaulted after demanding compliance with park regulations); *United States v. Lopez*, 710 F.2d 1071 (5th Cir.1983) (customs officer assaulted while detaining a fugitive); *United States v. Spears*, 631 F.2d 114 (9th Cir.1980) (wilderness officer assaulted while attempting to enforce camping regu-

lations); *United States v. Reid,* 517 F.2d 953 (2d Cir.1975) (DEA agent shot while attempting to stop a robbery); *United States v. Michalek,* 464 F.2d 442 (8th Cir. 1972) (treasury agents attacked while on undercover operation); *United States v. Heliczer,* 373 F.2d 241 (2d Cir.) (federal narcotics officers assaulted while making an arrest), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). The issue to be examined is whether the federal agent is "simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of [her] own." *Id.* at 245.

A federal officer on her way to or from work may be acting within the compass of her employment. In *United States v. Stephenson,* 708 F.2d 580 (11th Cir.1983) (per curiam), an FBI agent was approached as she walked from her automobile to the FBI office in Miami, Florida. The man who approached her grabbed her purse, which contained her service revolver, badge and identification. The agent struggled with her attacker, who broke free and ran to a getaway car manned by his associate. The court held that the agent "was engaged in the performance of her official duties, as indicated by the fact that she was on her way to report for work at the FBI office and by the fact that she was properly attempting to prevent theft of federal property." *Id.* at 581.

■ As in *Stephenson,* the question of engagement in official duty in the case at bar was a factual one and therefore properly was left to the jury. *See Lopez,* 710 F.2d at 1074. Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), a reasonable trier of fact could find that the evidence established Hoffer's guilt beyond a reasonable doubt. When Rivera was attacked by Hoffer, she was using her government-owned automobile—an automobile issued to her for work-related use only—to return from her surveillance as-

signment. She was to remain "on call" for further assignment, and the automobile was not yet secured when she was attacked. Rivera was duty-bound to see that the vehicle was parked properly, to protect it and to prevent its theft. We have no hesitation in saying that she was engaged in "discharging her mission" as a DEA agent at the time of the assault.

■ Finally, Hoffer claims that there was error in allowing one of the policemen who arrived at the scene in a police car to testify that he was responding to a call of "an officer needing assistance." Hoffer contends that this testimony unfairly influenced the jury as to the question of Rivera's "official duty." He contends that the testimony was hearsay and thus inadmissible. However, the word "officer" does not connote that Rivera was functioning in her official capacity. Nor was the police officer's testimony introduced to demonstrate that Rivera was an officer performing her duties. The statement was offered simply to show how the police came to arrive at the scene. A statement does not fit within the definition of hearsay unless it is "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hoffer's claim that admission of the police officer's testimony is a violation of his sixth amendment rights and of the hearsay rule therefore is meritless.

## CONCLUSION

The judgment of the district court is affirmed.