UNITED STATES of America, Appellee,

v.

Dyke HOY, Defendant–Appellant.

No. 353, Docket 97–1129.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1997.
Decided March 2, 1998.

Before: KEARSE, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York (Chin, J.), convicting defendant Dyke Hoy, following a jury trial, of assaulting Deputy United States Marshal Ronald J. Schlagel while Schlagel was engaged in the performance of official duties. The assault occurred while Schlagel was taking action in connection with a state law violation. On appeal, Hoy principally argues that Schlagel was not engaged in the performance of official duties at the time of the assault. In making this argument, Hoy challenges a policy of the United States Marshals Service authorizing deputy marshals to intervene upon observing the commission of state law crimes involving physical harm or the threat of such harm. Finding no merit in Hoy's contentions, we affirm.

## BACKGROUND

Schlagel became a deputy marshal in 1990. At the time of the events described in his trial testimony, his regular duty station was Tucson, Arizona. In August of 1995, the Marshals Service assigned Schlagel to New York City for a three-week period to assist in the court security detail for the World Trade Center bombing trial. Schlagel and approximately forty other deputy marshals assigned to the security detail from various parts of the country were quartered at the East Gate Hotel on East 39th Street in Manhattan.

At about 11:15 p.m. on August 19, 1995, after the completion of his assigned duties for the day, Schlagel left the East Gate Hotel to go to a corner food market. In accordance with instructions for off-duty conduct given by his Marshals Service supervisors for the security detail, Schlagel took with him his badge, credentials, handcuffs, firearm and ammunition clip. As he reached the corner of East 39th Street and Second Avenue, he heard a woman crying and screaming for help. He turned around and saw the woman lying on the sidewalk. A man later identified as Hoy was standing over the woman and holding her purse.

Schlagel observed Hoy walk into the doorway of a nearby apartment building carrying the purse. Schlagel then looked around to see if anyone was going to help the woman or if any police officers were nearby. Since it appeared that no one else was about to intervene, and that no police officers were in the area, Schlagel approached the woman, identified himself as a deputy United States marshal and displayed his badge and credentials. He offered to help the woman and asked her what had happened. She told him that she was Hoy's estranged wife, that she had gone to dinner with Hoy, and that Hoy had become drunk. She said that Hoy asked her to go with him to his apartment and that, when she refused to go, he knocked her down and grabbed her purse. Hoy took the purse with him when he entered the apartment building.

Hoy reappeared shortly thereafter and approached Schlagel and Mrs. Hoy. He angrily shouted to Schlagel that his argument with his wife was none of Schlagel's business. He warned Schlagel not to get involved, and

then stepped between his wife and Schlagel. At that point, Schlagel identified himself as a deputy United States marshal and showed Hoy his badge and credentials. Schlagel then asked Hoy what the problem was. Hoy responded that Schlagel was the problem and immediately struck Schlagel on the left side of his face, chipping a tooth. As Schlagel stepped backwards from the blow, Hoy moved toward him with fists clenched. Hoy forced Schlagel across the street and again punched him, this time striking him in the throat. Schlagel struck back and punches were exchanged. When Schlagel broke free from the scuffle, Hoy returned to his apartment building. Schlagel waited outside the building to make sure that Hoy did not leave.

A New York City police officer soon arrived to join Schlagel. The doorman at the East Gate Hotel had caused the police to be called during the course of the fracas. When Hoy finally exited his apartment building, Schlagel ordered him to put his hands behind his back and advised him that he was being arrested. Hoy attempted to strike Schlagel and was wrestled to the ground and placed in handcuffs by Schlagel and the police officer. Other New York City police officers then arrived and took Hoy into custody. Both Mrs. Hoy and Schlagel were treated by Emergency Medical Services technicians. Schlagel suffered two fractured teeth, a cut on the inside of his lips and bruises to his throat and jawbone.

Hoy was the only defense witness at trial, and his testimony presented a somewhat different version of the events that transpired on August 19. He testified that he was drunk when he took the purse of his estranged wife and went into his apartment building. Hoy claimed that his purpose was to get his wife to accompany him to his apartment. Upon discovering that his wife had not joined him as expected, Hoy returned to the street, purportedly out of concern for her safety. Upon his return, according to Hoy, he was taunted by Schlagel, who first challenged him to fight and then started a fight. Hoy said that Schlagel punched him after he was handcuffed and did not show him his credentials until the handcuffing took place.

Hoy was released from the custody of the New York City Police on August 20, 1995. On August 24, 1995, Hoy was arrested on a federal warrant in connection with the charge of assaulting a federal officer. He was immediately advised of his rights and thereafter admitted to the arresting officers that he had struck Schlagel on August 19. He stated that he would not have struck him if he had known that Schlagel really was a deputy marshal.

Critical to the resolution of the issues in this case is the proper definition of the role of a deputy United States marshal in state law enforcement. In this regard, Schlagel gave the following testimony about what he was told during his training as a deputy marshal:

> ... as Deputy U.S. Marshals, we did have the ability to become involved in incidents that we observed, that we witnessed on the street when we were on duty or off duty. [The Marshals Service] discouraged us from getting involved in minor things such as traffic offenses. They didn't want us chasing down speeders ... but they said if we saw somebody who was being harmed or being injured, a citizen, that we were, as Deputy U.S. Marshals, able to step in and prevent that from happening.

Upon their arrival in New York, the deputy marshals assigned to the court security detail received a special briefing by the Marshals Service pertaining to their off-duty activities. Schlagel testified that he and the other deputy marshals were instructed

> ... to be careful when we were off duty ... in New York, that there were a lot of things occurring in the city, [to] be aware of your surroundings. They told us not to leave our badge and credentials in the rooms when we left, to take them with us at all times.

> They told us that if we saw something occurring, to try and get a police officer to take care of it, but use your best judgment, and if you have to get involved with something, then make sure that you take care of it and notify the proper authorities.

Schlagel's testimony regarding these instructions was uncontradicted.

Further testimony pertaining to the state law enforcement responsibilities of deputy marshals was given by Flavio Lorenzoni, chief deputy marshal for the Southern District of New York. He testified "that a deputy in the off-duty capacity is authorized to take action when he sees a serious crime being committed with the potential of injury or when someone is being injured." Lorenzoni testified that if a deputy marshal is injured as a result of action taken in accordance with this policy, the Marshals Service would treat the incident as if it occurred while the deputy marshal was on duty and would fully cover any expenses incurred as a result of the injuries sustained. According to Lorenzoni, the policy was communicated to deputy marshals on a regular basis. The jury verdict finding Hoy guilty of assaulting a federal officer while the officer was engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b), was returned on October 10, 1996. Thereafter, the district court sentenced Hoy to a 4–month term of imprisonment, to be followed by a 3–year term of supervised release, and a statutory assessment of $50. The sentence included a two-level enhancement for obstruction of justice based on the district court's finding that Hoy gave false testimony at trial.

## DISCUSSION

■ At the outset, we take note of the government's contention that we must review for plain error because Hoy failed to preserve his claims by not raising at trial his challenges to the Marshals Service policy and the sufficiency of the evidence that Schlagel was engaged in the performance of official duties. This contention is without merit. Both prior to trial and at summation, Hoy argued that the government's proof of an oral policy should not be considered sufficient to establish that Schlagel was performing an official duty at the time he was assaulted. Moreover, after the government had presented its case and also after the jury rendered its verdict, Hoy made general motions pursuant to Rule 29 for acquittal, generally arguing that the government presented insufficient evidence to convict Hoy. See Fed. R.Crim.P. 29. Under these circumstances,

Hoy preserved his sufficiency claims for appeal. See United States v. Gjurashaj, 706 F.2d 395, 399 (2d Cir.1983) ("[T]he defendant need not specify the ground of the [Rule 29] motion in order to preserve a sufficiency claim for appeal.")

■ 18 U.S.C. § 111(a)(1) imposes criminal liability upon one who assaults a federal officer "while engaged in or on account of the performance of his official duties." A listing of the officers referred to in § 111(a) appeared in 18 U.S.C. § 1114 (1994) and included deputy United States marshals. Congress' purpose in enacting section 111(a)(1) was "to protect individual federal officers by providing a federal offense triable in a federal forum to supplement the state statutes for punishment of such attacks." United States v. Kelley, 850 F.2d 212, 214 (5th Cir.1988); see United States v. Hoffer, 869 F.2d 123, 125 (2d Cir.1989). "This protection is considered to be 'a matter essential to the morale of all federal law enforcement personnel and central to the efficacy of federal law enforcement activities.'" Id. at 125 (quoting United States v. Feola, 420 U.S. 671, 685 n. 18, 95 S.Ct. 1255, 1264 n. 18, 43 L.Ed.2d 541 (1975)).

■ Section 111 does not define official duties. Indeed, "[t]here is no bright-line test to define performance of ... official duties," Hoffer, 869 F.2d at 125, and "[t]he statutory requirement that a federal official covered by [section 111] must be engaged in the performance of his official duties [is] inherently fluid." United States v. Boone, 738 F.2d 763, 765 (6th Cir.1984) (per curiam). We have held generally that the proper inquiry is "whether the federal agent [was] 'simply acting within the scope of what the agent is employed to do. The test is whether the agent [was] acting within that compass or [was] engaging in a personal frolic of [his or her] own.'" Hoffer, 869 F.2d at 126 (quoting United States v. Heliczer, 373 F.2d 241, 245 (2d Cir.1967)). The question of whether an officer is engaged in an official duty is a factual one and therefore is properly left to the jury. See id.; see also Kelley, 850 F.2d at 213.

We have determined that a federal law enforcement policy may define as an official

duty the intervention of one of its agents in a state criminal law violation. *See United States v. Reid,* 517 F.2d 953, 964 (2d Cir. 1975). *Reid* involved an off-duty United States Drug Enforcement Administration ("DEA") agent who was in the process of having his hair cut when he heard a commotion next door. He investigated and discovered a robbery in progress at a liquor store. While attempting to protect the store owner and apprehend the robbers, the agent was shot by one of the robbers. The gunman was convicted of assaulting a federal officer in the performance of his official duties.

On appeal, we held that the DEA agent was acting in the performance of his official duties. *See id.* In so doing, we found significant the following provision of a DEA manual:

> Should an agent happen to witness a State violation (whether he is on or off duty) the [DEA] expects him to take reasonable action as a law enforcement officer to prevent the crime and/or apprehend the violator. This policy applies only to felonies or violent misdemeanors. It does not apply to traffic violations or other minor offenses.

*Id.* at 960. The manual also provided that "[t]he [DEA] will fully support the agent for any reasonable action taken by him in these situations." *Id.* We held that the word "duties" in section 111 should be liberally construed "in terms of what the officer ought to do because of being an officer." *Id.* at 964. We concluded that the DEA agent was not engaged in a frolic of his own or acting as a private citizen, but was acting within the scope of what he was employed to do as a law enforcement officer.

Since *Reid* was decided, other circuits have held that a federal officer or "agent is acting within the scope of his or her official duties in a variety of circumstances" not specifically mandated by Congress. *United States v. Clemons,* 32 F.3d 1504, 1507–08 (11th Cir. 1994) (surveying various circumstances in which courts have held that an agent or officer was acting within the scope of his or her official duties); *see also Hoffer,* 869 F.2d at 125. Congress has apparently made no attempt to circumscribe these holdings. In fact, it appears that Congress expressly accepted the expansive reasoning of these cases. In amending the federal kidnapping statute, *see* 18 U.S.C. § 1201(a)(5), the Senate Appropriations Committee noted that:

> The 'engaged in or on account of the performance of official duties' limitation is identical to that in 18 U.S.C. 111 and 18 U.S.C. 1114, which proscribe assaults on Federal officers.... The Committee intends that the body of case law that has developed concerning the meaning of the term in reference to these two statutes apply here. For example, in *United States v. Reid* .. [t]he assault on Federal officers statute was held to apply to the defendant because of a written DEA policy that off duty agents were expected to take reasonable action as law enforcement officers to prevent State felonies and violent misdemeanors and apprehend the violators.

S.Rep. No. 98–225, at 318–19 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3495.

■ The unwritten policy of the Marshals Service relied upon by Schlagel essentially mimics the written DEA policy at issue in *Reid.* The uncontested testimony of Schlagel and Lorenzoni established that the Marshals Service operated under an agency policy authorizing officers to intervene in circumstances where a citizen is threatened with harm as the result of the perpetration of a state law crime. Lorenzoni testified that if a deputy marshal did intervene in such circumstances, the Marshals Service would treat the deputy marshal as if he were on duty. The Marshals Service policy was reiterated for the benefit of the deputy marshals assigned to New York City to provide security for the World Trade Center bombing trial. Schlagel testified that, upon arriving in New York, he and the other deputy marshals were briefed on the rules governing their off-duty conduct. At the briefing, the deputy marshals were told (1) to carry their credentials, (2) if faced with a situation requiring police intervention, first to attempt to have a local police officer act, (3) to use their best judgment in determining if it was necessary to intervene, and (4) to take care of the situation and notify the authorities in cases where intervention became necessary. We think that the policy of

the Marshals Service in relation to action to be taken by deputy marshals confronted with state law violations was clearly established, and we decline Hoy's invitation to reject the policy as vague, standardless and discretionary. In our view, there is no substantial difference between the Marshals Service policy and the DEA policy approved in *Reid.* We attach no significance to the fact that the latter policy was disseminated in writing and the former was disseminated orally.

Schlagel's testimony concerning his actions on the night in question established that he was acting in accordance with the Marshals Service policy and therefore was engaged in the performance of official duties. Schlagel testified that he took his credentials and his firearm with him as instructed. He further testified that, after seeing Mrs. Hoy on the ground and hearing her screaming, he looked to see if any New York City police officers were near and did not see any. He then went to Mrs. Hoy, introduced himself as a marshal, displayed his credentials and then inquired as to what had happened. Upon Hoy's arrival, Schlagel again introduced himself as a marshal, displayed his credentials and asked Hoy what the problem was. Viewing Schlagel's testimony in the light most favorable to the government, a reasonable trier of fact could find that Schlagel was engaged in the work of a law enforcement officer as prescribed by the agency that employed him. He in fact did what he had to do specifically because of his status as a law enforcement officer. *Cf. Boone,* 738 F.2d at 765 ("totality of the activity" of an appeals court judge who was assaulted while in Cincinnati only to hear argument and was walking to courthouse on a Sunday to perform legal research, "was sufficiently related to the present performance" of her official duties).

■ Hoy argues that because the deputy marshals were *authorized,* but not necessarily *expected* to act, as were the DEA agents in *Reid,* the Marshals Service policy was insufficient to establish that Schlagel was engaged in the performance of an official duty. We

disagree. In *Reid,* "we attach[ed] no importance to the use of the word 'expect' rather than some stronger verb...." 517 F.2d at 961 n. 9a. Here we shall not attach undue importance to the use of "authorized" rather than a stronger term. It seems clear from the governing policy that a deputy marshal is expected and authorized to intervene in certain limited circumstances, especially where there is harm or a threat of harm as a consequence of the violation of state law. Here, Schlagel realized that no local police officers were near, so he identified himself as a marshal and performed his duties as a law enforcement officer by tending to Mrs. Hoy and attempting to prevent further injury to her. Because "[t]he scope of what the agent is employed to do is not defined by whether the officer is abiding by laws and regulations in effect at the time of the incident, nor is the touchstone whether the officer is performing a function covered by his job description," *United States v. Street,* 66 F.3d 969, 978 (8th Cir.1995) (quotation and citation omitted), we hold that the jury had sufficient reason to believe that given these circumstances, Schlagel was acting appropriately as a deputy marshal in the performance of official duties. *See Reid,* 517 F.2d at 964.

■ Finally, Hoy contends that because the federal government generally does not have the power to enforce local laws, the policy of the Marshals Service authorizing enforcement of state laws in limited circumstances is unconstitutional. It is generally incumbent upon a federal agency to regulate the conduct of its employees in the performance of that agency's business, *see e.g.,* 5 U.S.C. § 301 & 28 U.S.C § 561(f), and a policy such as that of the Marshals Service provides a proper means to regulate the conduct of deputy marshals in relation to the enforcement of state law. The Marshals Service policy authorizing its law enforcement personnel to intervene to protect United States citizens in the circumstances described by the policy poses no threat to local law enforcement, and does not implicate any constitutional interest.[1]

---

1. Although not necessary to our decision, we note that the State of New York has specifically empowered federal law enforcement officials to

act as peace officers and to enforce state law. *See* N.Y.Crim. Proc. L. § 2.15 (McKinney 1992). Although an "official duty" under 18 U.S.C.

We have examined Hoy's other contentions and have found them to be without merit.

## CONCLUSION

In accordance with the foregoing, the judgment of the district court is affirmed.

§ 111(a)(1) is determined as a matter of federal law, *see Kelley*, 850 F.2d at 213, section 2.15 does establish that when circumstances such as those faced by Schlagel arise, New York encourages federal officers to enforce New York law.