[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14508

_____

D.C. Docket No. 2:09-cr-00077-JES-SPC-9

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL TORRES,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 9, 2013)

Before DUBINA, JORDAN and BALDOCK,[*] Circuit Judges.

BALDOCK, Circuit Judge:

A jury convicted Defendant Manuel Torres of conspiracy to possess

_____

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

marijuana with intent to distribute as well as a substantive possession count. Defendant now appeals his conspiracy conviction, challenging the sufficiency of the evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

In 2004 or sometime prior, Defendant's brother Herman Torres recruited him to work in a marijuana growing operation run by Jose Diaz in southern Florida. The operation involved the conversion of multiple houses into grow houses, with up to six houses operating at a time. In 2004, Defendant helped set up a grow house on Everglades Boulevard in Collier County. He then worked as a caretaker at that house for about a year and a half. During this time he participated in growing and harvesting five or six crops. In 2006, Defendant helped construct tables and put up lights at a grow house on Chamberlain Drive in North Port, Florida. Carlos Graham, who oversaw the Chamberlain Drive house for Diaz, testified that Defendant "sometimes" helped Graham harvest marijuana at the Chamberlain Drive house. Record, vol. 7 at 1324–25. Graham said the organization harvested three crops of 100 plants at the house.

Later, Defendant became the caretaker at a grow house on Van Camp Street in North Port. He helped Diaz and Herman Torres steal an electrical transformer for use in that house. He only worked at this house for two months and, although

he was there for the beginning of the harvest, he did not complete it.  In April 2009, police executed a search warrant at a grow house on 8th Avenue (called the Desoto house at trial).  They found Defendant and 162 marijuana plants inside the house.  According to Diaz, the plants at the 8th Avenue house were one week away from harvesting.

In a superseding indictment, the Government charged Defendant with (1) conspiracy to manufacture and possess with intent to distribute 1,000 or more marijuana plants and to distribute and possess with intent to distribute 100 or more kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), (b)(1)(B)(vii), and 846, and (2) manufacturing and possessing with intent to distribute 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) and 18 U.S.C.  § 2.  At trial, Defendant's counsel moved for judgment of acquittal, and the district court denied the motion.  The jury convicted Defendant on both counts.

Defendant's initial guideline imprisonment range under the Sentencing Guidelines was 110–137 months, but his conviction on Count One of the superseding indictment carried a mandatory minimum sentence of ten years. Accordingly, the district court sentenced Defendant to 120 months in prison on each count, to be served concurrently.

II.

On appeal, Defendant only challenges his conviction on the conspiracy count. His brief identifies eleven "issues," which all boil down to a challenge to the sufficiency of the evidence. Specifically, he claims the Government failed to prove that he joined the conspiracy as early as 2002 and that he remained in it after his arrest in April 2009. He argues the only "physical evidence" that he conspired to manufacture and possess marijuana was the 162 plants seized at his arrest. Appellant's Br. at 27. He claims Diaz "lied" when he said Defendant was involved in six harvests and that he later "recanted." Id. Thus, the only evidence against him beyond the plants seized at his arrest was the testimony of "a couple of convicted felons," Jose Diaz and Carlos Graham, each of whom "were admitted liars." Id. at 28.

Ordinarily, we review a challenge to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the Government. United States v. Dominguez, 661 F.3d 1051, 1061 (11th Cir. 2011). But the Government argues we may only review Defendant's sufficiency challenge for plain error because he did not "assert in the district court the specific arguments that he asserts in his brief." Appellee's Br. at 29. The Government is correct that Defendant's motion for judgment of acquittal was general, rather than specific.

4

His attorney simply moved for "judgment of acquittal on behalf of defendant Manuel Torres," saying, "I do not think . . . the Government has proved guilty beyond a reasonable doubt as to Count 1 or Count 2."  Record, vol. 10 at 1832. We have, on occasion, reviewed only for plain error when the defendant "failed to move at trial for a directed verdict of acquittal on [the specific] basis" raised on appeal.  United States v. Hurn, 368 F.3d 1359, 1368 (11th Cir. 2004).  See also United States v. Hunerlach, 197 F.3d 1059, 1068 (11th Cir. 1999) ("Since the record does not show that Appellant raised this issue to the district court, our review of the district court's decision to deny the motion for judgment of acquittal on that basis is only for 'plain error.'").  In those cases, however, the defendants raised *specific* sufficiency-related arguments in the district court, and then raised other specific arguments on appeal.  See Brief of Appellee at *12, United States v. Hurn, 2003 WL 24191431 (11th Cir. 2003); Brief of Appellee at *34–35, United States v. Hunerlach, 1998 WL 34078952 (11th Cir. 1998).  In contrast, Defendant here raised a *general* sufficiency challenge in the district court.

A number of our sister circuits hold that a general sufficiency challenge is adequate to preserve specific sufficiency arguments on appeal, but that a defendant who seeks judgment of acquittal on specific grounds forfeits all other specific grounds on appeal.  See United States v. Cooper, 654 F.3d 1104, 1117 (10th Cir.

2011); United States v. Chance, 306 F.3d 356, 371 (6th Cir. 2002); United States v. Spinner, 152 F.3d 950, 955 (D.C. Cir. 1998); United States v. Hoy, 137 F.3d 726, 729 (2d Cir. 1998). But see United States v. Clarke, 564 F.3d 949, 953–54 (8th Cir. 2009) (applying plain error review to a specific argument on appeal even when the defendant filed a general motion for judgment of acquittal). We need not decide the appropriate standard of review, however, because Defendant's claim fails even under *de novo* review.

To convict a defendant of conspiracy under 21 U.S.C. § 846, the Government must prove (1) an agreement existed between the defendant and at least one other person, (2) the defendant knew the object of the conspiracy and the object was illegal, and (3) the defendant knowingly and voluntarily participated in the conspiracy. United States v. Westry, 524 F.3d 1198, 1212 (11th Cir. 2008) (per curiam). Here, the jury heard evidence that Defendant helped set up two grow houses, worked as a caretaker at three grow houses, helped steal a transformer to use at a grow house, and helped harvest five or six marijuana crops. Defendant engaged in these activities in close association with at least three other members of the conspiracy, including Diaz, Graham, and Herman Torres. Finally, police arrested Defendant in a grow house containing 162 marijuana plants. From this evidence, a jury could easily conclude Defendant was a member of the charged

6

conspiracy.

None of Defendant's counter-arguments gets him far.  First, he argues the Government failed to show he was involved in the conspiracy as early as 2002. The superseding indictment alleged that the conspiracy lasted "from at least in or about April 2002, and continuing up through the date of this Indictment."  Record, vol. 1 at 51.  The evidence at trial only linked Defendant to the conspiracy starting in 2004.  But this discrepancy does not matter.  "A defendant may be convicted of conspiracy if he joined the conspiracy after its inception and played only a minor role within it . . . ."  United States v. Hansen, 262 F.3d 1217, 1247 (11th Cir. 2001) (per curiam).

Next, Defendant makes the related argument that the evidence was insufficient because the superseding indictment alleged a conspiracy lasting through October 2009, yet Defendant was arrested in April 2009.  Again, however, our precedent forecloses this argument.  A conspirator "is presumed to be a part of the conspiracy until all conspiracy activity ceases or he proves that he withdrew." Id.  To withdraw, a conspirator must prove he has "taken affirmative steps to defeat the objectives of the conspiracy" and either "made a reasonable effort to communicate these acts to his co-conspirators or disclosed the scheme to law enforcement authorities."  United States v. Arias, 431 F.3d 1327, 1340–41 (11th

7

Cir. 2005) (quoting United States v. Young, 39 F.3d 1561, 1571 (11th Cir. 1994)).

This circuit's settled law says that "neither arrest nor incarceration automatically

triggers withdrawal from a conspiracy." United States v. Gonzalez, 940 F.2d

1413, 1427 (11th Cir. 1991). Defendant has not shown that he withdrew from the

conspiracy upon or after his April 2009 arrest. So the jury could conclude

Defendant was responsible for the conspiracy's actions up through the date of the

indictment.

Defendant next claims Diaz "recanted" testimony that Defendant had helped

with harvests at the 8th Avenue and Van Camp houses. Appellant's Br. at 27.

The record refutes this claim. In fact, Diaz clarified under cross-examination that

Defendant did not actually complete the harvest at the Van Camp house (though

he was there at the start) and was arrested before he could harvest the crop at the

8th Avenue house. Record, vol. 9 at 1753–54. But regardless of whether

Defendant actually harvested the plants, he possessed the plants during his time as

caretaker at these houses. See United States v. Thompson, 473 F.3d 1137, 1142

(11th Cir. 2006) ("Constructive possession exists where the defendant had

dominion or control over the drugs or over the premises where the drugs were

located.").

Defendant also argues Diaz and Graham were "admitted liars" and not

8

worthy of belief.  Appellant's Br. at 28.  This argument is entirely frivolous. When reviewing the sufficiency of the evidence we are bound by the jury's credibility determinations unless the testimony is "incredible as a matter of law." United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009) (per curiam) (quoting United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997)). "Testimony is only incredible if it relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." Id. (internal quotation marks omitted) (quoting Calderon, 127 F.3d at 1325).  "The fact that a witness has consistently lied in the past, engaged in various criminal activities, and thought that his testimony would benefit him does not make his testimony incredible."  United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005) (brackets and ellipsis omitted) (quoting United States v. Cravero, 530 F.2d 666, 670 (5th Cir. 1976)).

Finally, Defendant challenges the sufficiency of the evidence regarding the number of marijuana plants.  The Government argues we should not consider this argument because the number of plants is only relevant to Defendant's sentence, which he has not challenged.  It is true "the specific amount and type of drugs are not elements of [a 21 U.S.C. § 841(a)(1)] offense" and that "the government's failure to prove the amount or type charged in the indictment does not merit

9

reversal" of a defendant's conviction.  United States v. Baker, 432 F.3d 1189, 1133 (11th Cir. 2005).  So the jury could have convicted Defendant of conspiracy to violate 21 U.S.C. § 841(a)(1)—manufacturing or possessing with intent to distribute a controlled substance—without any proof of drug quantity.  But the indictment in this case charged Defendant with conspiracy to violate not only § 841(a)(1), but also subsections (b)(1)(A)(vii) (1,000 or more marijuana plants) and (b)(1)(B)(vii) (100 kilograms or more of marijuana).  These subsections increase the statutory maximum sentence from a default of 20 years, see § 841(b)(1)(C), to either life imprisonment (for 1,000 or more marijuana plants) or 40 years (for 100 kilograms or more of marijuana).  After Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

More importantly for this case, subsections (b)(1)(A)(vii) and (b)(1)(B)(vii) also create statutory *minimum* sentences of ten and five years, whereas a simple violation of § 841(a)(1) has no minimum sentence.  The Supreme Court recently expanded Apprendi's rule, and held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."  Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).  Thus, for Defendant to receive the

10

mandatory minimum sentence of ten years, which he did, the jury had to find beyond a reasonable doubt that he conspired to manufacture or possess with intent to distribute more than 1,000 marijuana plants or more than 100 kilograms of marijuana.

The Government concedes it needed to prove these drug quantities for purposes of sentencing, but argues that Defendant has not "challenge[d] his sentence . . . in his brief." Appellee's Br. at 43. In fact, the title page of Defendant's brief asserts that he appeals the district court's judgment and sentence, and his brief concludes by asking that his sentence be reversed. Appellant's Br. at 31. True, he does not make the kind of sentencing argument we usually see—that the district court abused its discretion by imposing an unreasonable sentence. See Gall v. United States, 552 U.S. 38, 41 (2007). But that is because the district court could not exercise its discretion; it was bound by the jury's findings, which required imposition of the statutory minimum. Simply because Defendant is challenging the jury's findings rather than the district court's discretionary decisions does not mean he is not challenging his sentence. Thus, Defendant has not waived his argument that the evidence was insufficient with respect to the number of plants.

Nevertheless, ample evidence supported the jury's finding that Defendant

conspired to manufacture and possess 1,000 or more marijuana plants. The evidence did not need to show Defendant *himself* possessed with intent to distribute 1,000 or more marijuana plants, as long as the conspiracy's overall goal was to possess that amount. See Salinas v. United States, 522 U.S. 52, 63–64 (1997) ("The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other."). Here, even the marijuana plants with which Defendant was *directly* involved total over 1,000 plants, regardless of the other plants grown by Defendant's co-conspirators. Diaz testified that Defendant was caretaker at the Everglades Boulevard house for five or six harvests and that the Everglades house yielded about 200 plants per harvest. Thus, while Defendant was at the Everglades Boulevard house, he cared for 1,000 to 1,200 plants. Graham testified that Defendant "sometimes" helped him harvest plants at the Chamberlain Road house, which yielded 300 plants over three harvests.[1] The Van Camp house,

---

[1] Defendant says Jose Diaz directly contradicted this testimony. On cross-examination, counsel asked Diaz about a grow house in Charlotte County (apparently the Chamberlain Drive house) that Graham was going to set up with a friend called "Beavus." Diaz testified that he visited the house "a couple times" while it was being set up and did not see Defendant there. Counsel then asked if Defendant was working at that grow house, and Diaz replied, "He was not." Record, vol. 9 at 1769. Counsel then asked, "And if you were told that Carlos Graham said that Manuel Torres was working on that grow house, would you say that's true or false?" Id. Diaz responded, "That's false." Id. The jury could have resolved this apparent conflict by concluding Defendant helped at the Chamberlain Drive house at times when Diaz was not visiting. But even if Graham indeed lied and the jury disbelieved him, the other evidence was

12

where Defendant served as caretaker for two months but did not complete the harvest, contained 34 lights with three or four plants per light.  Record, vol. 8 at 1582.  So during his time at that house, Defendant cared for between 102 and 136 plants.   Finally, police arrested Defendant at the 8th Avenue house, which contained an additional 162 plants.  From all this evidence, a reasonable jury could conclude Defendant conspired to manufacture or possess more than 1,000 marijuana plants.

AFFIRMED.

---

more than adequate to establish Defendant's responsibility for over 1,000 plants.