**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Agustin Alvarez LOPEZ,**
**Defendant-Appellant.**

No. 83–2073
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 20, 1983.

Heriberto Silva, Jr., Rio Grande City, Tex., for defendant-appellant.

James R. Gough, John M. Potter, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

The defendant Lopez was convicted of assaulting a federal Customs Patrol officer in Texas "while said officer was engaged in the performance of his official duties," a violation of 18 U.S.C. § 111.[1] On appeal, he contends that, although an assault was proved, a violation of the federal statute was not proved because, at the time of the assault, the customs officer was no longer engaged *"in the performance of his official duties,"* since he was then detaining a state-charged suspect (a companion of Lopez), whom he had no official duty to arrest or detain. Finding that at the time and place the detention of the state suspect was reasonably related to the federal officer's performance of his official duties, we affirm.

1

The relatively undisputed facts show:

Matthews, a federal customs officer (who was later assaulted by Lopez), had learned at the Texas state county sheriff's office that Alvarez, a federal fugitive[2], had been

---

1. 18 U.S.C. § 111 provides:

   Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

   Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. Among the federal officers specified as protected against assault are "any officer, employee or agent of the customs." 18 U.S.C. § 1114.

2. Alvarez had been convicted of a drug offense. A warrant had been issued for him as a parole violator.

seen at a motel in Roma, Texas, with certain individuals, Rosas and Coranda. Matthews incidentally then learned that a state warrant had been issued for arrest of the latter (Coranda) for a state crime. Matthews and a fellow customs agent went to the Roma area and in the return transit they recognized a vehicle travelling on the same highway, as belonging to Rosas, and they saw Coranda (the state suspect) in it, along with other unrecognized heads of passengers.

The federal officers stopped the vehicle to search for Alvarez, the federal fugitive, known to be armed. The passengers in the car were asked one by one to step outside and identify themselves. Among the individuals in the car was Lopez, the present defendant. Officer Matthews, who had identified himself as a customs agent, asked Coranda about the state warrant. Coranda replied that he had talked to the judge and had cleared the matter up. Matthews then told Coranda to step to the rear of the car, so that the officer could radio the sheriff's office and verify whether or not Coranda was still wanted, telling Coranda that, if the warrant was still outstanding, he would detain him for the sheriff's office.

Coranda walked away while Matthews was talking to the other passengers, refused to halt upon Matthews' shout, and was caught by the other customs agent as he was going under a fence by the roadside. As Matthews and his fellow officer were struggling with Coranda to detain him, one of the bystanders screamed, "Look out, officer. They are going to kill you." When Matthews looked around, he heard the tires screaming and saw the car lights headed straight toward him and his fellow officer. The two officers took off along the fence line for a tree to protect them, and the vehicle missed them by about four feet. The automobile then sped down the highway.

It is not disputed that the jury could find from the evidence that the automobile that sped towards the officers was driven by the defendant Lopez.

2

As raised by his motions for acquittal at the close of the evidence, the defendant Lopez contends that the evidence did not show any violation of the federal offense charged, i.e., an assault upon federal officers while they were engaged in the performance of their *official* duties. He does not dispute for present purposes that the officers' stop of the car and their ascertaining the identity of the passengers was in the performance of an official duty, namely, the search for the federal fugitive, Alvarez. Lopez contends that, however, the federal officers' "official" duties ended when they ascertained that the *federal* fugitive was not among the passengers.

Lopez strongly argues that the federal officers had no more right then to detain Coranda, the *state* fugitive, than would a private citizen; and that, under Texas law, a private citizen is not entitled to arrest a suspect for evading arrest under a warrant, a misdemeanor. Thus, he suggests, while a state crime of assault may have been committed, no federal offense is proven that is punishable in a federal court.

The government in part counters by characterizing Coranda's conduct in evading arrest as a felony under Texas state law (by reason of which the federal customs officers were, under Texas law, entitled to arrest him). Neither argument bears upon the federal officer's "official duties" within the meaning of 18 U.S.C. § 111, the federal statute that the defendant Lopez is charged with violating.

■ A purpose of the statute is to provide a federal offense, triable in a federal forum, by which to interdict attacks upon federal law enforcement officers, a matter central to the efficiency of federal law enforcement activities; and thus not to entrust the States with sole responsibility for punishment of such attacks. *United States v. Feola*, 420 U.S. 671, 648 n. 18, 95 S.Ct. 1255, 1264 n. 18, 43 L.Ed.2d 541 (1975). The arrest or detention by the federal officer may or may not have been authorized by state law, but in either event whether the conduct was in the performance of his "offi-

cial duties" within the meaning of the federal statute is determined by federal, not state, law.

■ With reference to whether an assault occurs upon a federal officer "while engaged in . . . the performance of his official duties," 18 U.S.C. § 111:

> The test of a Government agent's conduct is whether he is acting "within the scope of what [he] is employed to do," as distinguished from "engaging in a personal frolic of his own." *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir. [1967]), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). See also *United States v. Montanaro,* 362 F.2d 527 (2d Cir. [1966]), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966); *Amaya v. United States,* 247 F.2d 947 (9th Cir. 1957), cert. denied, 355 U.S. 916, 78 S.Ct. 346, 2 L.Ed.2d 276 (1958); *Arwood v. United States,* 134 F.2d 1007 (6th Cir. [1943]), cert. denied, 319 U.S. 776, 63 S.Ct. 1436, 87 L.Ed.2d 1722 (1943).

*United States v. Cho Po Sun,* 409 F.2d 489, 491 (2d Cir.1969). *See also United States v. Young,* 614 F.2d 243, 244 (10th Cir.1980); *United States v. Cunningham,* 509 F.2d 961, 963 (D.C.Cir.1975); *United States v. Frizzi,* 491 F.2d 1231, 1232 (1st Cir.1974); *United States v. Martinez,* 465 F.2d 79, 82 (2d Cir. 1972); *United States v. Michalek,* 464 F.2d 442 (8th Cir.1972).[3]

■ Generally speaking, a federal officer "engaged in performing [the] function" in which employed, *Cho Po Sun, supra,* 409 F.2d at 491—"in good faith and colorable performance of [his] duty," *Cunningham, supra,* 509 F.2d 963—"even if effecting an arrest without probable cause, is still engaged in the performance of his official duties, provided he is not on a 'frolic of his own', and is protected from interference or assault", *Martinez, supra,* 465 F.2d at 82. *See United States v. Johnson,* 542 F.2d 230, 232–33 (5th Cir.1976). Of course, as a matter of defense, an accused may present evidence that the officer's conduct was beyond

the reasonable scope of his employment. *United States v. Kartman,* 417 F.2d 893, 896 (9th Cir.1969). Further, whether the officer's conduct outside the apparent scope of his "official" duties is within the protection of the statute may present an issue of fact determinable by the jury. *Frizzi, supra,* 491 F.2d at 1232; *Michalek, supra,* 464 F.2d 442.

3

■ Here, in the performance of his official duty to investigate whether a federal fugitive was in an automobile, the federal officer came across an individual reported to him to have been a state fugitive earlier that day travelling in the company of the federal offender. The federal officer was assaulted by a third person while he sought to detain the state fugitive to see if he was still sought by state authorities. We think that the jury, properly instructed as it was, could properly find that the officer's action, reasonably related in time and place to the performance of his federal function, was while the officer was engaged in "the performance of his official duties" within the meaning of 18 U.S.C. § 111. *See Heliczer, supra,* 373 F.2d at 244–46.

In *United States v. Reid,* 517 F.2d 953 (2d Cir.1975), an off-duty Drug Enforcement Agent (DEA) officer was shot while attempting to break up a robbery, after having identified himself as a federal agent. Standing instructions to DEA agents included his duty as a law enforcement officer, whether on duty or off duty, to take reasonable action to attempt to prevent a state violation if he happened to witness one in progress. The convictions of those who attacked him were affirmed as a violation of 18 U.S.C. § 111.

In so doing, the court held that the statutory language "while engaged in or on account of the performance of his official duties" comprehended "what the officer ought to do because of being an officer." 517 F.2d at 964. The court then pointed out

---

**3.** 18 U.S.C. § 111 also inderdicts attacks upon a federal officer "on account of the performance of his official duties." Thus, an attack upon an off-duty federal officer based upon his status as a federal officer is likewise punishable under the statute. *United States v. Velarde,* 528 F.2d 387 (9th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1513, 47 L.Ed.2d 765 (1976).

that federal and state law enforcement officers heavily rely upon reciprocal help in investigations of joint interest. The court concluded that if, under the facts before the court, "federal law enforcement officers do what they are properly expected to do in the enforcement of state criminal laws, they should have the same federal protection they would receive in the performance of their other duties." *Id.*

In the present case, analogously, the federal officer later assaulted had received information from a state officer that a federal fugitive he sought earlier that day had been in the company of a state fugitive sought by state authorities. When the federal officer came across the state fugitive later that day in the course of his unsuccessful search for the federal fugitive, if he had *not* detained the state fugitive for the immediate attention of state authorities, he might reasonably have been regarded as *not* doing "what [an] officer ought to do because of being an officer." *Reid, supra,* 517 F.2d at 984. Thus, even without (as in *Reid*) evidence of standing instructions to assist state law enforcement in state-violation matters happened upon, the jury could properly find under the evidence, as it did, that the present assault upon the federal officer occurred while he was engaged in "the performance of his official duties" within the meaning of 18 U.S.C. § 111.

*Conclusion*

Accordingly, we AFFIRM the conviction.

AFFIRMED.