**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Lynn KELLEY,
Defendant–Appellant.**

No. 87–1858.

United States Court of Appeals,
Fifth Circuit.

July 12, 1988.

Wally Bowman, Bowman, Donohue, Desmone & Alexander, Irving, Tex. (Court-appointed), for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GOLDBERG, Circuit Judge:

A jury found the appellant guilty of one count of assaulting a federal officer engaged in the performance of official duties. *See* 18 U.S.C. § 111.[1] The district court

---

1. 18 U.S.C. § 111 provides:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

sentenced the appellant, Michael Lynn Kelley, to three years in prison. The only issue on appeal is whether the federal officer, United States Secret Service Agent Kathleen Flatley, was engaged in the performance of her official duties when Kelley assaulted her. Finding that she was, we affirm.

## I

This case involves basically undisputed, but certainly unusual, facts. At 5:00 p.m. on June 24, 1987, Agent Flatley was on duty, driving a government vehicle to investigate a credit card fraud case. As she drove along Field Street, on the edge of downtown Dallas, she saw a brown sedan speeding through a vacant parking lot. The brown sedan left the lot, drove over a median, hit a tree and a utility post, then flew through the air finally landing on top of a small compact car.

Agent Flatley immediately radioed for the local police. The brown sedan's driver, later identified as appellant Kelley, tumbled out and ran one block up Cedar Springs Road. At that point, Kelley, wearing only a T-shirt and socks, collapsed in the street.

Agent Flatley drove towards Kelley and parked her car across Cedar Springs Road to keep oncoming traffic from hitting him. After noticing that Kelley was bleeding, she radioed for an ambulance.[2] She then placed a portable red light on top of her car and, rolling down her window, told Kelley she was a law enforcement officer. She reassured Kelley and told him that an ambulance was on the way.

Agent Flatley was wearing a shoulder holster with her issued weapon. She began to put on her police jacket. Kelley got up, opened the car's door, and jumped on top of Agent Flatley pushing her down across the front seat of her car. Kelley used one hand to choke Agent Flatley and the other to try to take her gun. As Agent Flatley yelled that she was a police officer and had a gun, two bystanders came to her aid and wrestled Kelley to the ground. Agent Flatley handcuffed Kelley. An ambulance, fire truck, local police, and two other Secret Service Agents arrived. A Dallas Police squad car removed Kelley from the scene.

## II

The only issue on appeal is whether Agent Flatley was "engaged in ... the performance of [her] official duties" when Kelley assaulted her.

Whether Agent Flatley was within the scope of her official duties was a question of fact properly submitted to the jury. *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir.1983). We must affirm the jury's finding that she was within that scope if, considering the evidence in the light most favorable to the verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

For purposes of § 111, the scope of Agent Flatley's official duties is established by federal, not state, law.[3] Agent Flatley was clearly engaged in her official duties as she was driving to investigate the credit card fraud.[4] No federal statute, however, required that Agent Flatley stop

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. Section 1114 includes among the federal officers protected from assault "any officer or employee of the Secret Service." 18 U.S.C. § 1114.

2. Agent Flatley requested an ambulance "because of ... one injury [and] possible other injuries back at the scene of the accident." The small compact car, however, had only one occupant and he was not injured by the collision.

3. *Lopez*, 710 F.2d at 1073–74.

4. *See* 18 U.S.C. § 3056(b) (Secret Service's duties include detection and arrest of persons violating federal credit card fraud statutes).

In *United States v. Boone*, 738 F.2d 763 (6th Cir.), *cert. denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984), the court found a federal appellate court judge within the scope of her official duties while she was walking down a Cincinnati street on her way to do research in a federal court library in preparation for hearing

to aid or arrest Kelley.[5] Kelley therefore argues that the jury erred in finding that Agent Flatley was within the scope of her official duties.

When Congress enacted § 111 it intended to protect federal functions. *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975). Congress, however, also intended to protect individual federal officers by providing a federal offense triable in a federal forum to supplement the state statutes for punishment of such attacks. *Id.; Lopez*, 710 F.2d at 1073.

Over twenty years ago, in *United States v. Heliczer*, 373 F.2d 241 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967), the Second Circuit formulated the test still used by this Circuit and others:

> "Engaged in ... performance of official duties" is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own.[6]

In *United States v. Reid*, 517 F.2d 953 (2d Cir.1975), Judge Friendly amplified the test as follows:

> [T]he statutory language "while engaged in or on account of the performance of his official duties" comprehended "what the officer ought to do because of being an officer."

*Id.* at 964.

In *Lopez*, we adopted and applied the test originally set forth in *Heliczer* along with Judge Friendly's amplification. Lopez was a passenger in a car stopped by federal customs agents looking for a federal fugitive. After the federal customs agents determined that the federal fugitive was not in the car, they detained another passenger, Coranda, because they believed he was a state fugitive. While the federal customs agents tried to confirm that state authorities were still seeking Coranda, Lopez tried to run the agents down with the car. Lopez argued that the evidence was insufficient to establish that the agents were still engaged in the performance of

oral arguments the following morning. *Id.* at 764–65. Similarly, in *United States v. Stephenson*, 708 F.2d 580 (11th Cir.1983), the Eleventh Circuit found an FBI agent within the scope of her official duties when she was walking from a parking lot on her way to report for work at the FBI office. *Id.* at 581.

**5.** The statutorily enumerated duties of the United States Secret Service include protection of the President, Vice–President, their families, major candidates for these offices and distinguished foreign visitors. 18 U.S.C. § 3056(a). The duties also include detection and arrest of persons violating specified federal banking, counterfeiting and credit card fraud statutes. *Id.* § 3056(b). The only regulations promulgated address specific situations not in issue here. *See* 31 C.F.R. §§ 401–409. Agent Flatley testified that "We don't have per se one written policy but we are taught, when we see a situation that [requires] our aid, that we should be responsible law enforcement officers and follow through."

Since Kelley attacked Agent Flatley immediately after she told him that she was an officer, he might have attacked her *because* she was an officer. In *Lopez*, we said:

> 18 U.S.C. § 111 also interdicts attacks upon a federal officer "on account of the performance of his official duties." Thus, an attack upon an off-duty federal officer based upon his status as a federal officer is likewise pun-

ishable under the statute. *United States v. Velarde*, 528 F.2d 387 (9th Cir.1975), *cert. denied*, 425 U.S. 914, 96 S.Ct. 1513, 47 L.Ed.2d 765 (1976).

710 F.2d at 1074 n. 3. Neither the indictment nor the evidence at trial, however, addressed this prong of § 111.

**6.** *Id.* at 245; *see Lopez*, 710 F.2d at 1074; *see also United States v. Young*, 614 F.2d 243, 244 (10th Cir.1980); *United States v. Reid*, 517 F.2d 953, 960 (2d Cir.1975); *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir.1974) (mailman did not leave the scope of his employment when he left his car to seek an apology from a man who spit on him); *United States v. Michalek*, 464 F.2d 442, 443 (8th Cir.1972) (agents of the Alcohol, Tobacco & Firearms Division of the Treasury Department were engaged in the performance of their official duties when in a bar playing poker with and offering to sell "hot" snowmobiles to individuals suspected of offering to sell a machine gun).

In *United States v. Cunningham*, 509 F.2d 961 (D.C.Cir.1975), the court said simply:

> Federal officers engaged in good faith and colorable performance of their duty may not be forcibly resisted, even if the resistor turns out to be correct that the resisted actions should not in fact have been taken. The statute requires him to submit peaceably, seeking legal redress thereafter.

*Id.* at 963.

their official duties when he attempted to run over them, because their official duties ceased when they learned that the federal fugitive was not in the car. The *Lopez* panel held:

> When the federal officer came across the state fugitive … in the course of his unsuccessful search for the federal fugitive, if he had *not* detained the state fugitive for the immediate attention of state authorities, he might reasonably have been regarded as *not* doing "what [an] officer ought to do because of being an officer." … Thus, the jury could properly find under the evidence, as it did, that the present assault upon the federal officer occurred while he was engaged in "the performance of his official duties" within the meaning of 18 U.S.C. § 111.

710 F.2d at 1075 (emphasis in original).

Similarly, when Agent Flatley came across the accident scene, if she had *not* stopped, summoned the appropriate state authorities, and attempted to keep other cars from hitting Kelley as he lay in the middle of a busy street, she might reasonably have been regarded as *not* doing "what [an] officer ought to do because of being an officer." *Id.; see Reid,* 517 F.2d at 964. Her actions at the accident scene were in every sense professional and appropriate. The indicia of her official capacity —the light on her government car, her announcement that she was an officer and her official police jacket—made it clear to any observer that she was engaged in the performance of official duties.[7] We certainly cannot characterize her actions as a personal frolic. Under the law in this Circuit, as established by *Lopez,* and the facts in this record, we find no basis for overturning the jury's conclusion that Kelley's assault occurred while Agent Flatley was engaged in the performance of official duties.

AFFIRMED.

---

7. Of course, it is not necessary that the assailant know his victim is a federal officer. *Feola,* 420