**UNITED STATES of America, Plaintiff,**

v.

**Jose Antonio MARQUEZ and Elvin David Rodriguez, Defendants.**

**Crim. No. 94–039 (JAF).**

United States District Court, D. Puerto Rico.

July 11, 1994.

Ernesto Hernandez–Milan, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.

Laura Maldonado–Rodriguez, Asst. Federal Public Defender, Benicio Sanchez–Rivera, Federal Public Defender, Jose R. Aguayo, San Juan, PR, for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

On January 17, 1994, FBI Agent Eliasib Ortiz, Jr., was the victim of an attempted robbery by a group of individuals, including defendants Jose Antonio Marquez and Elvin David Rodriguez. The United States brought charges against defendants under 18 U.S.C. § 111 for assaulting a federal employee while engaged in or on account of the performance of official duties. On motions to dismiss the indictment pursuant to Fed. R.Crim.P. 12(b)(1),[1] defendants allege that their acts do not fall under the coverage of the statute because Agent Ortiz was not engaged in the performance of his official duties when the alleged assault occurred. *See Docket Document Nos. 35 and 36.* In response, the government contends that Agent Ortiz' action of preventing a crime, coupled with the fact that he was "on call" the evening of the incident, places defendants' act within the scope of 18 U.S.C. § 111. *See Docket Document No. 33.* For the reasons outlined below, we grant defendants' motions to dismiss.

### I.

### Facts

For purposes of this motion, the parties have stipulated the following facts. FBI Special Agent Eliasib Ortiz is a member of the FBI Safe Street Task Force, which investigates street gangs and carjackings. He is always "on call" and carries a beeper for that reason. On the evening of January 17, 1994, Agent Ortiz left his home in his private car, stopped at an automatic teller machine ("ATM"), and went to a public telephone to make a personal call. He saw a car approaching with the headlights off. One of the occupants announced that it was a hold-up. Fearing for his life, Agent Ortiz drew his firearm and fired at the assailants' vehicle, which sped away. Approximately thirty minutes later, the suspects' vehicle was detained and its occupants were arrested by officers of the Puerto Rico Police Force.

### II.

### Discussion

The only issue raised by defendants' motions to dismiss is whether Special Agent Ortiz was "engaged in ... the performance of official duties" under 18 U.S.C. § 111 when he was assaulted by defendants. We conclude that he was not.

18 U.S.C. § 111 provides in pertinent part:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114[2] of this title while engaged in or on account of the performance of official duties ... shall be fined under this title or imprisoned not more than three years, or both.

Congress' purposes in enacting this statute were to protect federal functions, *United States v. Feola,* 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975), and to "afford the federal officer, engaged in performing his duties, the protection of the federal court when a common law offense is committed against him." *United States v. Frizzi,* 491 F.2d 1231 (1st Cir.1974); *United States v. Hoffer,* 869 F.2d 123, 125 (2d Cir.), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989); *United States v. Kelley,* 850 F.2d 212, 214 (5th Cir.), *cert.*

---

1. Fed.R.Crim.P. 12(b)(1)–(2) provides:

    (b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following must be raised prior to trial:

    (1) Defenses and objections based on defects in the institution of the prosecution; or

    (2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court

    ....

2. Employees of the FBI fall under the individuals designated under 18 U.S.C. § 1114.

denied, 488 U.S. 911, 109 S.Ct. 267, 102 L.Ed.2d 255 (1988). "Engaged in or on account of the performance of official duties" has been defined as "simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own." *United States v. Heliczer*, 373 F.2d 241 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); *Kelley*, 850 F.2d at 214; *see Frizzi, supra.* There is no bright-line test to make this determination and the totality of the circumstances must be examined. *See Hoffer*, 869 F.2d at 125; *United States v. Boone*, 738 F.2d 763, 765 (6th Cir.), *cert. denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 416 (1984).

In *Hoffer*, a Drug Enforcement Agency ("DEA") officer was assaulted by an individual who fled with the agent's assigned government car. The Second Circuit determined that the agent was engaged in her official duties because she was returning from a surveillance assignment, remained "on call", and "was duty bound to see that the [government] vehicle was parked properly, to protect it and to prevent its theft." 869 F.2d at 126.

In *Kelley*, a Secret Service agent was assaulted after she stopped to assist a person involved in a car accident on her way to investigate a credit card fraud. The agent radioed for an ambulance, placed a portable red light on top of her government car, identified herself as a law enforcement officer, and was putting on her police jacket when she was attacked by the individual. In finding that the Secret Service agent was engaged in her official duties, the court reasoned that the officer did what she ought to do as a law enforcement official and that she gave the indicia that "made it clear to any observer that she was engaged in the performance of official duties." 850 F.2d at 215.

In *Boone*, a federal judge was found to be engaged in official duties when she was thrown to the ground and her purse was snatched while visiting Cincinnati for a hearing. The court concluded that her job required her to be there and that she was walking to the federal courthouse to do legal research for her case. 738 F.2d at 765.

In *United States v. Reid*, 517 F.2d 953 (2d Cir.1975), an off-duty DEA agent was getting a haircut in a barbershop when he noticed an armed robbery taking place in a liquor store across the street. With his badge in one hand and his service weapon in the other, he ran to the scene of the crime and shouted "freeze, police." The court found that the agent was performing his official duties because he did "what the officer ought to do because of being an officer." *Id.* at 964. That is, he had to take reasonable action to prevent a crime, apprehend a criminal, and provide cooperation to state officers to do the same. *Id.*

In the case under consideration, Agent Ortiz left his home in his private car, stopped at an automatic teller machine ("ATM"), went to a pay phone to make a personal call, encountered the assailants, and withdrew his gun. Unlike *Hoffer*, Agent Ortiz was not using a government car, nor was he on duty, coming to or returning from work as in *Boone, Kelley*, or *Hoffer*. He did not give any indicia that he was performing his official duties, he did not identify himself as a law enforcement officer, nor was he intervening to protect third parties as in *Kelley* or *Reid*. Rather, Agent Ortiz, in fear for his life, pulled out a weapon like any other citizen might have done under the same circumstances. Therefore, we conclude that Agent Ortiz was involved in a "personal frolic" and not "standing up for his employer's right to have him pursue his duties unmolested." *Frizzi*, 491 F.2d at 1231. Looking at the totality of the circumstances, Agent Ortiz' condition of being permanently "on call" and his conduct of resisting a crime against his person are not enough to modify our determination.

## III.

### Conclusion

The indictment against defendants Marquez and Rodriguez shall be dismissed without prejudice of prosecution by the Commonwealth of Puerto Rico.

**IT IS SO ORDERED.**