# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2020

Lyle W. Cayce
Clerk

No. 17-11342

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

VICTOR MANUEL SOLORZANO, *also known as* VICTOR SOLORZANO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-283-1

Before HIGGINBOTHAM, JONES, and HIGGINSON, *Circuit Judges*.

PER CURIAM:[*]

Defendant Victor Manual Solorzano was convicted by a jury for drug trafficking, assaulting two federal officers, and using a firearm in relation to a crime of violence. Appearing pro se, Solorzano now challenges his conviction and 567-month sentence. For the reasons that follow, we AFFIRM his

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 17-11342

conviction but VACATE his sentence and REMAND for further proceedings.

## I. BACKGROUND

In November 2014, agents with the Department of Homeland Security, Homeland Security Investigations (HSI) were investigating a drug smuggling operation. The officers directed their attention toward Solorzano following his encounter with a known suspect.

In October 2015, officers witnessed Solorzano meeting with unknown individuals in parking lots on two separate occasions, prompting them to initiate a traffic stop. They detained Solorzano when he failed to provide a valid driver's license and, upon searching his vehicle, discovered mobile devices, a handgun, and some United States currency. A K-9 unit alerted positive for narcotics, but Solorzano was ultimately released.

Following the traffic stop, three HSI task force officers—Shannon McFarland, Michael Bali, and Joe Swanson—were assigned to the case to investigate Solorzano. Swanson obtained an order from a Texas judge to place a tracking device on Solorzano's vehicle based on reasonable suspicion of criminal activity. McFarland then dropped Bali off in front of Solorzano's residence so that he could install the device on Solorzano's vehicle.

Bali installed the device without mishap, and Swanson arrived to pick him up. But as Bali walked towards Swanson's vehicle, Solorzano appeared, assault rifle in hand, alongside his cousin, Edgar Solorzano ("Edgar"). After a brief verbal exchange, Solorzano shot at Bali, wounding him and shattering the rear window of Swanson's vehicle. Solorzano continued to shoot at the two officers as they sped away. The tracking device was never activated.

Throughout this encounter, McFarland, Bali, and Swanson drove unmarked vehicles, wore plain clothes, and never informed Solorzano that

they were law enforcement.  Edgar testified at trial that he and Solorzano did not know they were firing at law enforcement officers.  Bali himself recognized on cross-examination that Solorzano had no reason to believe they were officers.

Police later searched Solorzano's home, where they found methamphetamine.  Edgar was arrested shortly thereafter.  He identified Solorzano as a methamphetamine dealer, and stated that Solorzano obtained the narcotics from "the Mexicans."  Solorzano was charged and subsequently arraigned on the following charges:  possession of methamphetamine with intent to distribute and aiding and abetting (Count 1 under 21 U.S.C. §§ 2, 841(a)(1) and (b)(1)(C)); two counts of assault on a federal officer and aiding and abetting (Counts 3 and 5 under 18 U.S.C. § 111(b)); and two counts of using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence and aiding and abetting (Counts 4 and 6 under 18 U.S.C. § 924(c)(1)(C)(i)).[1]

Following a three-day trial in April 2017, a jury found Solorzano guilty of these charges.  On November 2, 2017, the district court sentenced Solorzano to 567 months' imprisonment—147 months for counts 1, 3, and 5 to be served concurrently, 10 years for Count 4 to be served consecutively, and 25 years for Count 6 to be served consecutively—followed by five years' supervised release.  Solorzano timely appealed.

## II. ANALYSIS

Solorzano brings a host of claims challenging his conviction and sentence.  First, he contends the district court plainly erred by failing to hold the traffic stop of his vehicle and installation of the traffic device violated his

---

[1] Solorzano was also charged with possession of a firearm in furtherance of a drug trafficking crime (Count 2), but he was found not guilty.

Fourth Amendment rights.  He also argues the evidence was insufficient to convict him for assault of a federal officer, and that the Government failed to provide him relevant material to this charge in violation of *Brady*.  Last, he challenges three of the sentencing enhancements imposed.  We address each issue in turn.

## A.  Fourth Amendment Claims

Solorzano first argues that the district court erred by failing to suppress evidence deriving from both the traffic stop and placement of the tracking device, on the ground that those events violated his Fourth Amendment rights.  Because Solorzano did not object to the admission of this evidence at trial, we review for plain error.  *United States v. Knezek*, 964 F.2d 394, 399 (5th Cir. 1992).  Solorzano must identify (1) a forfeited error, (2) that is clear and obvious, and (3) that affected his substantial rights.  *United States v. Abbate*, 970 F.3d 601, 606 (5th Cir. 2020) (per curiam).  "If he satisfies those three requirements, we may, in our discretion, remedy the error, but 'only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 (2009)).

The Fourth Amendment protects against "unreasonable searches and seizures."  U.S. CONST. amend. IV.  "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."  *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).  This court analyzes traffic stops using the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).  "Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'"  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  This court assesses the "'totality of the

circumstances' . . . to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002).

Solorzano does not identify any evidence that actually derived from the traffic stop. In any event, the traffic stop was lawful. *See United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013) (reasonable suspicion of drug crime justified traffic stop).

Solorzano's Fourth Amendment claim objecting to the tracking device fares no better. He contends that the state order to place the tracking device on his vehicle was not valid because it was based on reasonable suspicion rather than probable cause. Even assuming *arguendo* that the state order was not a valid warrant, Solorzano has not demonstrated that the district court clearly erred by failing to exclude the Government's evidence of his assault. Solorzano is correct, of course, that any evidence derived from a Fourth Amendment violation must be disregarded under the fruit-of-the-poisonous-tree doctrine. *See United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013). Nonetheless, derivative evidence "may be sufficiently attenuated from the Fourth Amendment violation even where the violation is a but-for cause of the discovery of the evidence." *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018).

Solorzano cannot point to any evidence directly procured from the tracking device because it was never used. And to the extent Solorzano argues that his subsequent attack on Bali and Swanson stems from the tracking device and must be suppressed, he cites no case law for the dubious proposition that a defendant's life-threatening assault on law enforcement officers should be excluded because they installed a warrantless tracking device. *See United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (a claim

that is "novel" and "not entirely clear under the existing case authority" is "doom[ed] . . . for plain error"). His claim fails.

## B. Sufficiency of the Evidence and *Brady* Violation

Solorzano next challenges the sufficiency of the evidence to uphold his conviction under 18 U.S.C. § 111(b). Section 111(b) forbids, in pertinent part, the assault of a federal officer with a deadly weapon while the officer is engaged in or on account of the performance of official duties. *See* §§ 111(a), (b). Solorzano timely moved for a judgment of acquittal. As such, we review his challenge de novo. *United States v. Tinghui Xie*, 942 F.3d 228, 234 (5th Cir. 2019). Although our review is de novo, this standard is highly deferential to the verdict, and "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

A state officer "acting in cooperation with federal officers in a federal operation when he was assaulted . . . easily fits within the coverage of §[] 111." *United States v. Hooker*, 997 F.2d 67, 74 (5th Cir. 1993). The officer must be "acting within the scope of what he is employed to do as distinguished from engaging in a personal frolic of his own." *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983) (cleaned up). "Generally speaking, a federal officer engaged in performing the function in which employed, in good faith and colorable performance of his duty, even if effecting an arrest without probable cause, is still engaged in the performance of his official duties . . . and is protected from interference or assault." *Id.* (cleaned up). After reviewing the trial testimony of McFarland, Bali, and Swanson, which documented their roles in the federal investigation, we hold that the jury had sufficient evidence to conclude the officers were acting in their capacities as HSI task force officers.

No. 17-11342

Relatedly, Solorzano brings a *Brady* claim, arguing the Government hid documents showing Swanson, Bali, and McFarland were not acting as federal officers when they placed the tracking device.[2] Because Solorzano did not raise this issue before the district court, we review for plain error.[3] *United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014).

*Brady* holds that the prosecution's suppression of evidence favorable to the accused and material to either guilt or punishment violates a defendant's due process rights. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963). Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the prosecution disclosed the evidence. Trial evidence here revealed that the officers in question obtained the order for the tracking device and installed it while investigating Solorzano as part of the HSI task force. Contrary to Solorzano's contention, the documents in question do not support his position that the officers were not acting as federal officers during this time. Because the documents do not pose a reasonable probability of a different outcome, Solorzano's *Brady* claim is without merit.

---

[2] The documents in question include a form designating Bali, Swanson, and McFarland as customs officers; a memorandum of understanding between United States Immigration and Customs Enforcement (ICE) and the "sponsoring agency" for the three officers; an ICE directive outlining its policies for customs officers; and communications between the three officers and their task force regarding the procurement and placement of the tracking device.

[3] This court has previously declined to review *Brady* claims that were not raised in the district court. *See, e.g.*, *United States v. Rice*, 607 F.3d 133, 142 (5th Cir. 2010). But other cases have opted to review *Brady* claims raised for the first time on appeal for plain error. *See, e.g.*, *United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014). Because Solorzano's claim fails regardless, we need not resolve this tension here.

## C.  U.S.S.G. § 3A1.2(b):  The Official Victim Enhancement

Solorzano asserts the district court erred in imposing a six-level, official victim enhancement under U.S.S.G. § 3A1.2(b) when calculating the guideline range for Counts 3 and 5 (the assaults on Bali and Swanson).  Again, Solorzano did not object in the district court, so we apply plain error review. *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012).

Section 2A2.2, which governs aggravated assault, mandates a two-level increase when a defendant was convicted under § 111(b) for assault of a federal officer, as Solorzano was.  *See* § 2A2.2(b)(7).  Comment 4 to § 2A2.2, "Application of Official Victim Adjustment," instructs:  "If subsection (b)(7) applies, § 3A1.2 (Official Victim) also shall apply."  § 2A2.2 comment. (n.4).  Section 3A1.2, in turn, states in relevant part:

> (a) If (1) the victim was (A) a government officer or employee . . . and (2) the offense of conviction was motivated by such status, increase by 3 levels.
>
> (b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels.

All parties agreed, and the district court acknowledged, that Solorzano did not meet the criteria of § 3A1.2(a)(2).  He did not know Bali and Swanson were federal officers when he shot at them, and therefore could not have been motivated by their official status.  Even so, the district court read comment 4 to mean that the enhancement under § 3A1.2 applied *regardless* whether Solorzano met its criteria.

This reading is incorrect.  The "most natural reading" of comment 4 is that § 3A1.2 applies, provided the obvious caveat that its criteria are met. *United States v. Bustillos-Pena*, 612 F.3d 863, 867 (5th Cir. 2010) (adopting the most natural reading of the sentencing guidelines and its commentary). And although we have not addressed this language previously, we have made

clear that an enhancement under § 3A1.2, when instructed by § 2A2.2(b), necessitates that the defendant be motivated by officer status. In *United States v. Williams*, 520 F.3d 414, 422–24 (5th Cir. 2008), the district court imposed a § 3A1.2(b) enhancement after imposing a two-level § 2A2.2(b) enhancement (much like here). The defendant argued that the court erred in imposing the enhancement because he was not motivated by the victim's official status. *Id.* at 424. The court rejected his argument—not because the defendant did not have to meet the criteria of § 3A1.2(b), but rather because the court found he was motivated by the officer's official status. *Id.*

Because Solorzano was not motivated by Bali's and Swanson's official status, we hold the district court erred in imposing the six-level § 3A1.2(b) enhancements. We further hold the error was plain or obvious, because the guidelines' language explicitly requires knowledge. *See United States v. Maturin*, 488 F.3d 657, 663 (5th Cir. 2007) (finding plain error when "plain statutory language" makes resolution of issue "indisputably clear").

And so we turn to the third prong of plain error review: whether the error affected Solorzano's substantial rights. "When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show" an effect on his substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Removing the § 3A1.2(b) enhancements would lower Solorzano's applicable guidelines range for Counts 1, 3, and 5 from the current range of 135–168 months of imprisonment to 97–121 months of imprisonment.[4]    Such an error

---

[4] The calculation is as follows. Without the six-level increase from § 3A1.2, the adjusted offense level for Group 2 (i.e., Count 3) is lowered from 27 to 21, and for Group 3 (i.e., Count 5), lowered from 22 to 16. Group 1 (i.e., Count 1) would have an adjusted offense level of 30—nine levels higher than Group 2 and 14 levels higher than Group 3. Because Groups 2 and 3 are nine or more levels less serious than Group 1 (the group with the highest level), neither group receives any units for computing the combined offense

substantially affected his rights. As for the fourth and final prong, the Supreme Court has made clear that "[i]n the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018). We thus vacate Solorzano's sentence on Counts 3 and 5 and remand so that he may be resentenced under the appropriate Guidelines.

## D. U.S.S.G. § 2D1.1(b)(5): The Importation Enhancement

Solorzano argues that the district court erred by imposing the § 2D1.1(b)(5) importation enhancement when calculating the Guidelines applicable to Count 1. Section 2D1.1(b)(5) mandates a two-level increase when the offense involved the importation of methamphetamine. Solorzano asserts there was no evidence that the methamphetamine in question was imported from Mexico. Because Solorzano objected to this enhancement below, we review the district court's factual finding for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.*

Solorzano relies on *United States v. Nimerfroh*, 716 F. App'x 311, 313, 316 (5th Cir. 2018), an unpublished decision where this court held that a defendant's statements that he was "dealing with the 'cartel,'" absent further context, was not enough to support an importation enhancement under § 2D1.1(b)(5). Solorzano reasons there is similarly not enough context

---

level. *See* § 3D1.4(c). Solorzano would therefore have 1.0 units, rather than the current 2.5, and would not receive an increase pursuant to § 3D1.4 of the Guidelines. With a total offense level of 30, and a criminal history category of I, the Guidelines dictate a range of 97-121 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). We recognize, of course, that this is not much of a reduction all things considered, as Solorzano's sentence is substantial.

here. Not so. In overruling Solorzano's objection, the district court observed that officers testified to witnessing Solorzano meeting with a known suspect in an investigation centered on narcotics "coming through the border." The court also pointed to Edgar's statements in the Presentence Report—specifically, that Solorzano had "obtained methamphetamine from 'the Mexicans'" and had referred to his source as the "wetbacks." The court explained the latter term was a "derogatory or pejorative term for a Mexican National," and concluded Solorzano "was aware that the methamphetamine was being deported [*sic*] from Mexico." From this record, the district court's finding is certainly plausible, and there is no clear error as a result.

## E. Mandatory Consecutive Sentence for Second § 924(c)(1) Conviction

Finally, Solorzano challenges the 25-year mandatory consecutive sentence for Count 6, his second § 924(c)(1) conviction. The Supreme Court in *Deal v. United States*, 508 U.S. 129, 133, 113 S. Ct. 1993, 1997 (1993) held that the 25-year mandatory minimum under § 924(c) applies when a defendant is convicted of multiple § 924(c) counts in a single proceeding. Recognizing that we are bound by Supreme Court precedent, Solorzano raises two new arguments on appeal; we review for plain error. *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017).

First, he attempts to distinguish *Deal*, arguing that his case poses the novel scenario in which the two § 924(c)(1) violations were committed during the same criminal transaction.[5] But neither *Deal* nor this court distinguishes convictions that occurred during the same transaction. *See United States v. Houston*, 625 F.3d 871, 874 (5th Cir. 2010) (imposing the 25-

---

[5] Solorzano also preserves his argument before the district court that *Deal* was wrongly decided.

year mandatory minimum sentence under § 924(c)(1)(C) for crimes committed in the same criminal transaction, a carjacking).

Second, Solorzano turns to § 403 of the First Step Act of 2018, contending it applies retroactively because his sentence is on appeal. Section 403 amended § 924(c)(1), so that "to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution." *United States v. Gomez*, 960 F.3d 173, 176 (5th Cir. 2020). Section 403 explicitly states, however, that it will "apply to any offense that was committed before the date of enactment of this Act [December 21, 2018], *if a sentence for the offense has not been imposed as of such date of enactment*." First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (emphasis added). "A sentence is 'imposed' when the district court pronounces it, not when the defendant exhausts his appeals." *Gomez*, 960 F.3d at 177. The district court sentenced Solorzano on November 2, 2017, over a year before the Fair Sentencing Act was enacted. For these reasons, we affirm the district court's sentence on Count 6.

## III. CONCLUSION

Based on the foregoing, Solorzano's conviction is **AFFIRMED**. Because the district court plainly erred in applying the sentence enhancement under § 3A1.2(b) for Counts 3 and 5, Solorzano's sentence is **VACATED**. We **REMAND** for resentencing consistent with this opinion.